UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CEN COM INC., a Washington corporation d/b/a American Digital Monitoring,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NUMEREX CORP., a Pennsylvania corporation; NEXTALARM, LLC, a Georgia limited liability corporation, and DOES 1-10,<br><br>　　　　　Defendants. | CASE NO. C17-0560RSM<br><br>ORDER ON PENDING MOTIONS |

## I.　　INTRODUCTION

This matter comes before the Court on the following motions:

1) Defendants' Motion for Judgment on the Pleadings (Dkt. #22);

2) Plaintiff's Motion for Protective Order (Dkt. #27); and

3) Defendants' Motion for Sanctions and an Order to Show Cause (Dkt. #35).

For the reasons set forth below, the Court resolves the motions as follows. Defendants' and Plaintiff's remaining discovery motions (Dkts. #39, #41 #58 and #59) will be resolved by separate Order(s).

///

///

ORDER
PAGE - 1

## II. BACKGROUND

This breach of contract/trade secret matter was removed to this Court on April 11, 2017. Dkt. #1. According to the Complaint, Defendant NextAlarm, LLC ("NextAlarm") and Plaintiff Cen Com, Inc. ("Cen Com") are businesses in the alarm-monitoring industry. Dkt. #1-2 at ¶¶ 1.1 and 1.2. The parties worked together for several years. *Id.* at ¶ 4.4. That business relationship allowed Cen Com to monitor NextAlarm accounts and respond to signals from those accounts to summon the appropriate first responders. *Id.* Cen Com contends that while providing those services, its employees learned that NextAlarm lacked crucial and commercially valuable information/data regarding NextAlarm customers. *See* ¶¶ 4.6-4.7. Cen Com allegedly acquired that missing information/data while providing services for NextAlarm. *Id.* When NextAlarm notified Cen Com that Cen Com's services would no longer be needed, Cen Com offered to sell that data to NextAlarm, but a sale never materialized. Instead, the parties entered into a deal whereby Cen Com agreed to act solely as an intermediary by forwarding NextAlarm signals to a new vendor whose live operators would dispatch emergency services or contact customers as needed. *Id.* at ¶ 4.8 and Ex. A thereto. The agreement required NextAlarm to use reasonable efforts to ensure that the new vendor did not use Cen Com's data for improper purposes. *Id.* and ¶ 4.10.

Cen Com contends that NextAlarm violated the agreement by working with the new vendor to steal commercially valuable and confidential information from Cen Com databases. *Id.* at ¶¶ 4.13-4.20. Based on these allegations, Cen Com asserts twelve claims against NextAlarm, including claims for breach of contract, negligence, fraud/misrepresentation, negligent misrepresentation, tortious interference with a business expectancy, conversion (stolen data), violation of Washington's Consumer Protection Act ("CPA"), unjust enrichment, aiding

and abetting, trade secret misappropriation (Uniform Trade Secrets Act), civil conspiracy and vicarious liability. *Id.* at ¶ ¶ 5.1-16.2.

### III. DISCUSSION

**A. Defendants' Motion for Judgment on the Pleadings**

*1. Legal Standard*

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move to dismiss a suit "[a]fter the pleadings are closed . . . but early enough not to delay trial." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *Stanley v. Trustees of Cal. State Univ.*, 433 F.3d 1129, 1133 (9th Cir. 2006); *see also Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). Because a motion for judgment on the pleadings is "functionally identical" to a motion to dismiss, the standard for a Rule 12(c) motion is the same as for a Rule 12(b)(6) motion. *See Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1052 n.1 (9th Cir. 2008).

In deciding a 12(b)(6) or 12(c) motion, this Court is limited to the allegations on the face of the Complaint (including documents attached thereto), matters which are properly judicially noticeable and other extrinsic documents when "the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). The Court must construe the complaint in the light most favorable to the Plaintiff and must accept all factual allegations as true. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The Court must also accept as true all reasonable inferences to be drawn from the material allegations in the Complaint. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247-48

(9th Cir. 2013); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). However, the Court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

   *2. Claims at Issue*

   Defendant now moves for the dismissal of all causes of action in this matter, except for the trade secret misappropriation claim, on the basis that Washington's trade secret laws displace those theories of liability. Dkt. #22 at 3-4. Plaintiff opposes the motion. Dkt. #25. For the reasons discussed herein, the Court agrees in part with Defendant and dismisses some of Plaintiff's claims.

   Washington's Uniform Trade Secrets Act ("UTSA") prohibits misappropriation of trade secrets. RCW 19.108, *et seq.*; *Thola v. Henschell*, 140 Wn. App. 70, 76, 164 P.3d 524, 528 (2007). Before the legislature enacted the UTSA, the common law prohibited similar acts. *See, e.g.*, *J.L. Cooper & Co. v. Anchor Secs. Co.*, 9 Wn.2d 45, 64, 113 P.2d 845 (1941) (allowing equitable action against a former employee who used a confidential customer list in his new business venture). But the UTSA is not a catch-all for industrial torts. *Electro-Craft Corp. v. Controlled Motion, Inc.*, 332 N.W.2d 890, 897 (Minn. 1983). The UTSA "displaces conflicting tort, restitutionary, and other law of this state pertaining to civil liability for misappropriation of a trade secret." RCW 19.108.900(1). However, it does not affect "[c]ontractual or other civil liability or relief that is not based upon misappropriation of a trade secret." RCW 19.108.900(2)(a).

   When examining whether a civil claim is preempted by the UTSA, courts often utilize a three-step analytical framework as a "helpful guide," beginning with the premise that a plaintiff "may not rely on acts that constitute trade secret misappropriation to support other causes of

ORDER
PAGE - 4

action." *Thola*, 140 Wn. App. at 82 (citing to *Mortgage Specialists, Inc. v. Davey*, 153 N.H. 764, 778-79, 904 A.2d 652 (2006) and *Ed Nowogroski Ins., Inc. v. Rucker*, 88 Wn. App. 350, 358, 944 P.2d 1093 (1997), *aff'd*, 137 Wn.2d 427 (1999) (*Rucker* I)). Using this framework, the Court: (1) assesses the facts that support the plaintiff's civil claim, (2) asks whether those facts are the same as those that support the plaintiff's UTSA claim, and (3) will conclude that the UTSA preempts liability on the civil claim unless the common law claim is factually independent from the UTSA claim. *See Mortgage Specialists, Inc. v. Davey*, 153 N.H. 764, 778-79, 904 A.2d 652 (2006). This three-step analysis is meant to preclude duplicate recovery for a single wrong. Accordingly, the Court now turns to each of Plaintiff's claims.

In Claim One, Plaintiff asserts a breach of contract. Dkt. #1-2 at ¶¶ 5.1-5.5. "Cen Com alleges that the conduct described in this Complaint constitutes a breach of contract by NextAlarm and Numerex." *Id.* at ¶ 5.3. The alleged facts focus on the history of the business relationship between Plaintiff and Defendant, the theft/data mining of proprietary information, and Plaintiff's belief that Defendant is still actively data mining and intentionally stealing Plaintiff's information. *Id.* at ¶¶ 4.1-4.24. Plaintiff's Trade Secret Misappropriation claim relies on the same facts. *Id.* at ¶¶ 14.1-14.9. Indeed, Plaintiff alleges that its data constitutes a protected trade secret, it took steps to protect that data, it has economic value, that Defendant stole the data and retained it even after Plaintiff demanded its return, that Defendant assisted others in stealing the data, and that Plaintiff was harmed as a result. The Court concludes that the breach of contract claim is not factually independent from the UTSA claim, and will dismiss it.

Likewise, the Court will dismiss Claims Two through Eight. In each of those claims, Plaintiff relies on the conduct described in the Complaint. The conduct described centers on the alleged theft/data mining of proprietary information, and Plaintiff's belief that Defendant is still

ORDER
PAGE - 5

actively data mining and intentionally stealing Plaintiff's information. *Id.* at ¶ ¶ 4.1-4.24. As with the breach of contract claim, Claims Two through Eight are not factually independent from the UTSA claim. *Compare* Dkt. #1-2 at ¶ ¶ 6.1-12.4 *with* ¶ ¶ 14.1-14.9. Accordingly, those claims will also be dismissed.

With respect to Claim Nine for aiding and abetting, and Claim Eleven for civil conspiracy, those claims rely on the now dismissed claims, as well as the conduct described in the Complaint. *See* Dkt. #1-2 at ¶ ¶ 13.1-13.4 and 15.1-15.6. Therefore, those claims must be dismissed as well.

Finally, with respect to Plaintiff's Claim Twelve for vicarious liability, *id.* at ¶ ¶ 16.1-16.2, the Court notes that Washington courts have explicitly determined that "one may violate the UTSA vicariously and be held responsible for such violation." *Thola*, 140 Wn. App at 78. Defendant argues that this claim fails because the underlying tort claims fail. Dkt. #22 at 11. However, as Washington courts also recognize, vicarious liability is a general theory of civil liability that is not based on trade secret misappropriation and, therefore, the UTSA does not preempt it. *See* RCW 19.108.900(2)(a). *Thola*, 140 Wn. App. at 81. Accordingly, the Court declines to dismiss this claim.

*3. Leave to Amend*

Ordinarily, leave to amend a complaint should be freely given following an order of dismissal, "unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987); *see also DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) ("A district court does not err in denying leave to amend where the amendment would be futile." (citing *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990)). Although in this case, the Court has determined that Plaintiff's claims are not factually distinct as drafted, Plaintiff has attempted to distinguish the claims in

ORDER
PAGE - 6

briefing. *See* Dkt. #25. Thus, the Court will allow Plaintiff to attempt to cure its deficiencies through amendment.

**B. Plaintiff's Motion for Protective Order**

The Court now turns to Plaintiff's Motion for a Protective Order. Strangely, by way of this motion, Plaintiff asks the Court for an Order deeming documents previously designated by Defendants as confidential or for attorney's eyes only, as non-confidential, and directing Defendant to remove those designations on a series of documents produced under Bates Stamp Nos. Numerex_0000329-0000340. Dkt. #27. The Court will deny this motion.

On June 26, 2017, this Court entered the parties' proposed Protective Order to govern this matter. Dkt. #19. With respect to documents marked by a party as confidential or attorney's eyes only, the Order directs:

> Before filing confidential material or discussing or referencing such material in court filings, the filing party shall confer with the designating party to determine whether the designating party will remove the confidential designation, whether the document can be redacted, or whether a motion to seal or stipulation and proposed order is warranted. Local Civil Rule 5(g) sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal.
>
> . . .
>
> 7. CHALLENGING CONFIDENTIALITY DESIGNATIONS
>
> 7.1 Timing of Challenges. Any party or non-party may challenge a designation of confidentiality at any time. Unless a prompt challenge to a designating party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.
>
> 7.2 Meet and Confer. The parties must make every attempt to resolve any dispute regarding confidential designations without court involvement. Any motion regarding confidential designations or for a protective order must

ORDER
PAGE - 7

> include a certification, in the motion or in a declaration or affidavit, that the movant has engaged in a good faith meet and confer conference with other affected parties in an effort to resolve the dispute without court action. The certification must list the date, manner, and participants to the conference. A good faith effort to confer requires a face-to-face meeting or a telephone conference.
>
> 7.3 Judicial Intervention. If the parties cannot resolve a challenge without court intervention, the designating party may file and serve a motion to retain confidentiality under Local Civil Rule 7 (and in compliance with Local Civil Rule 5(g), if applicable). The burden of persuasion in any such motion shall be on the designating party. Frivolous challenges, and those made for an improper purpose (*e.g.*, to harass or impose unnecessary expenses and burdens on other parties) may expose the challenging party to sanctions. All parties shall continue to maintain the material in question as confidential until the court rules on the challenge.

Dkt. #19 at ¶ ¶ 5.4 and 7.1-7.3.

There are numerous deficiencies with Plaintiff's motion. First, Plaintiff improperly brings the motion as one for a Protective Order under Federal Rule of Civil Procedure 26(c). Dkt. #27 at 6. That Rule does not pertain to the type of relief requested by Plaintiff through its motion. Moreover, Plaintiff fails to acknowledge the governing Protective Order and the provisions of that Order that do pertain to the relief that Plaintiff requests, as described above.

More importantly, Plaintiff failed to engage in a good faith meet and confer prior to filing the instant motion. Whether the motion is brought under FRCP 26(c) or pursuant to the Protective Order, Plaintiff was required to meet and confer. *See* LCR 1, 5(g)(1)(A) and 26(c)(1). Asking an opposing party to respond to an email request the same day the party plans to file a document does not meet the Court's requirements for a good faith meet and confer. *See* Dkt. #28 at ¶ 13.

Finally, after failing to properly meet and confer, Plaintiff then violated the Protective Order by filing the documents marked confidential and/or attorney's eyes only on the public docket. *See* Dkt. #26, Exs. G and I. The Court will not excuse this violation after the fact.

ORDER
PAGE - 8

Defendant seeks an award of fees and costs pursuant to Federal Rule 26 for successfully opposing this motion, and that such award be granted against both Plaintiff and its counsel. Dkt. #30 at 11. The Court denies this request as it has already determined that Federal Rule of Civil Procedure 26 is not applicable to the issue presented by Plaintiff in its motion, but will address appropriate relief in the context of Defendants' Motion for Sanctions.

### C. Defendants' Motion for Sanctions

Finally, the Court turns to Defendants' Motions for Sanctions and an Order to Show Cause. Dkt. #35. In that motion, Defendant seeks an Order requiring Plaintiff to show cause for its actions, requiring Plaintiff to show cause whether "Attorney's Eyes Only" information was shared with anyone not so permitted in the Protective Order, and requiring Plaintiff to pay those fees and costs which Defendants incurred to cure the problem and bring this motion. Dkt. #35 at 1-2.

Rule 37(b)(2)(A) provides that if a party "fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). "The definition of 'order' in Rule 37(b) has been read broadly. The rule grants courts the authority to impose sanctions where a party has violated a protective order. *See O'Connor v. Uber Techs., Inc.*, No. 13-CV-03826-EMC, 2017 U.S. Dist. LEXIS 141095, 2017 WL 3782101, at *4 (N.D. Cal. Aug. 31, 2017) (quoting *Life Techs. Corp. v. Biosearch Tech., Inc.*, No. C-12-00852 WHA (JCS), 2012 U.S. Dist. LEXIS 63974, 2012 WL 1600393, at *8 (N.D. Cal. May 7, 2012)); *Avago Techs., Inc. v. IPtronics Inc.*, No. 5:10-CV-02863-EJD, 2015 U.S. Dist. LEXIS 75948, 2015 WL 3640626, at *3 (N.D. Cal. June 11, 2015). *See also Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d

770, 784 (9th Cir. 1983) (affirming assessment of attorney's fees as sanction for violation of stipulated protective order).

Rule 37(b)(2)(C) provides that "[i]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

In addition, District Courts may impose sanctions as part of their inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991). Indeed, district courts can impose sanctions for a "full range of litigation abuses." *Id.* at 55. A finding of bad faith is usually required before a court can enter sanctions pursuant to its inherent authority. *Lahiri v. Universal Music and Video Distribution Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010) (citing *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107-08 (9th Cir. 2002); *Fink v. Gomez*, 239 F.3d 989, 993-94 (9th Cir. 2001)). However, "a 'willful' violation of a court order does not require proof of mental intent such as bad faith or an improper motive, but rather, it is enough that a party acted deliberately." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012) (holding that counsel acted willfully when he knowingly filed a class certification motion without redacting confidential information in violation of protective order).

The Court agrees with Defendants that sanctions are appropriate in this matter. The Court expects all parties and their counsel to follow the Orders issued by the Court, and to act in a manner that is professional, efficient and in the best interests of justice. Further, this Court does not look kindly on gamesmanship and tit-for-tat arguments between counsel. Accordingly, Plaintiff shall show cause as ordered below.

## IV. CONCLUSION

Having reviewed the parties' motions, along with the remainder of the record, the Court hereby finds and ORDERS:

1. Defendants' Motion for Judgment on the Pleadings (Dkt. #22) is GRANTED as discussed above, with leave to amend. Any amended complaint shall be filed no later than 20 days from the date of this Order. Should Plaintiff decline to file any Amended Complaint, all claims except for the trade misappropriation claim will be dismissed with prejudice.

2. Plaintiff's Motion for Protective Order (Dkt. #27) is DENIED as discussed above.

3. Defendants' Motion for Sanctions and an Order to Show Cause (Dkt. #35) is GRANTED. **No later than fourteen (14) days from the date of this Order, Plaintiff shall disclose whether "Attorney's Eyes Only" information was shared with anyone not so permitted in the Protective Order, and shall show cause why it should not be sanctioned as proposed by Defendant for violating this Court's Protective Order.** Defendant shall not file a response unless requested by the Court. Nothing in this Order precludes the parties from resolving this issue, or any other pending discovery issue, without further Court intervention.

DATED this 7 day of March, 2018.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE