IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CEN COM INC., a Washington corporation d/b/a American Digital Monitoring,<br><br>Plaintiff,<br><br>v.<br><br>NUMEREX CORP., a Pennsylvania corporation; NEXTALARM, LLC, a Georgia limited liability corporation, and DOES 1-10,<br><br>Defendants. | CASE NO. C17-0560RSM<br><br>ORDER DENYING PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO DISMISS |

## I. INTRODUCTION

This matter comes before the Court on the following motions:

1. Plaintiff's Motion for Summary Judgment, or in the Alternative, Summary Adjudication, on Defendants' Counterclaims (Dkt. #112 (filed under seal));

2. Plaintiff's Partial Motion for Summary Judgment Finding Defendants' Breach of Contract (Dkt. #117 (filed under seal)); and

3. Plaintiff's Motion to Dismiss and to Strike Defendants' New Counterclaim (Dkt. #146).

On these motions, Plaintiff argues that the undisputed material facts in this matter support summary dismissal of all of Defendants' counterclaims. Dkts. #112 and #146. Plaintiff further argues that Defendants' Washington Consumer Protection Act counterclaim should be

ORDER– 1

dismissed because it is based on an entirely new legal theory which has been raised too late in these proceedings. Dkt. #146. With respect to Plaintiff's breach of contract claim, Plaintiff argues that Defendants have breached a current contract by failing to pay certain fees for services provided by Plaintiff to Defendants. Dkt. #117. Defendants respond that genuine disputes as to the material facts preclude summary judgment on the breach of contract claim and counterclaims. Dkt. #134. For the reasons set forth below, the Court now DENIES Plaintiff's Motion for Summary Judgment on Defendants' Counterclaims, DENIES Plaintiff's Motion for Summary Judgment on its Breach of Contract claim, and DENIES Plaintiff's Motion to Dismiss.

## II. BACKGROUND

This breach of contract/trade secret matter was removed to this Court on April 11, 2017. Dkt. #1. According to the initial Complaint, Defendant NextAlarm, LLC ("NextAlarm") and Plaintiff Cen Com, Inc. ("Cen Com") are businesses in the alarm-monitoring industry. Dkt. #1-2 at ¶¶ 1.1 and 1.2. The parties worked together for several years. *Id.* at ¶ 4.4. That business relationship allowed Cen Com to monitor NextAlarm accounts and respond to signals from those accounts to summon the appropriate first responders. *Id.* Cen Com contends that while providing those services, its employees learned that NextAlarm lacked crucial and commercially valuable information/data regarding NextAlarm customers. *See* ¶¶ 4.6-4.7. Cen Com allegedly acquired that missing information/data while providing services for NextAlarm. *Id.* When NextAlarm notified Cen Com that Cen Com's services would no longer be needed, Cen Com offered to sell that data to NextAlarm, but a sale never materialized. Instead, the parties entered into a deal

ORDER– 2

whereby Cen Com agreed to act solely as an intermediary by forwarding NextAlarm signals to a new vendor whose live operators would dispatch emergency services or contact customers as needed. *Id.* at ¶ 4.8 and Ex. A thereto. The agreement required NextAlarm to use reasonable efforts to ensure that the new vendor did not use Cen Com's data for improper purposes. *Id.* and ¶ 4.10.

On March 7, 2018, this Court granted Defendants' Motion for Judgment on the pleadings. Dkt. #60. The Court determined that Plaintiff's Claims 1-9 and 11 were displaced by the UTSA. *Id.* The Court left Plaintiff's claim for Vicarious Liability, recognizing that was a general theory of liability rather than a separate claim. Thus, the only remaining claim for litigation was one for trade secret misappropriation. *Id.* The Court then granted Plaintiff leave to amend.

On March 27, 2018, Plaintiff filed its Amended Complaint. Dkt. #73. Plaintiff continued to allege that:

> defendant Numerex Corp., and its subsidiary NextAlarm, LLC, knowingly and willfully, in violation of its legal and contractual duties, independently, and together with a non-party, Amcest Corporation, improperly accessed, took, used, and gained the benefit of confidential, proprietary, and valuable data from and owned by the plaintiff Cen Com, Inc., including but not limited to Cen Com's trade secret information, subscriber data, and other valuable, proprietary data.

Dkt. #73 at ¶ ¶ 1.1 and 4.1. Based on those allegations, *inter alia*, Plaintiff asserted ten claims against Defendants, including claims for breach of contract, negligence, fraud/misrepresentation, negligent misrepresentation, conversion, violation of Washington's CPA, unjust enrichment, aiding and abetting, civil conspiracy and vicarious liability. *Id.* at

ORDER– 3

¶ ¶ 5.1-14.2. It no longer asserted a claim for trade secret misappropriation under the UTSA. Defendants then moved to dismiss the Amended Complaint. Dkt. #76.

On May 17, 2018, this Court granted in part Defendants' motion to dismiss. Dkt. #111. In that Order, the Court found that Washington's trade secret laws displaced all of Plaintiff's theories of liability, with the exception of the portion of Claim One for breach of contract on the basis that Defendants failed to pay certain fees and/or make timely payments as required by the contract. *Id.* The instant motions followed.

## III. DISCUSSION

### A. Legal Standards

*1. Summary Judgment*

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (*citing Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)). Material facts are those which might affect the outcome of the suit under governing law. *Anderson,* 477 U.S. at 248.

The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 251.

*2. Motions to Dismiss*

In deciding a 12(b)(6) motion, this Court is limited to the allegations on the face of the Complaint (including documents attached thereto), matters which are properly judicially noticeable and other extrinsic documents when "the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). The Court must construe the complaint in the light most favorable to the Plaintiff and must accept all factual allegations as true. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The Court must also accept as true all reasonable inferences to be drawn from the material allegations in the Complaint. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247-48 (9th Cir. 2013); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). However, the Court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

**B. Operative Pleading**

As an initial matter, the Court finds it necessary to make clear the operative pleading as related to these motions, as Plaintiff filed its motions seeking summary judgment on

ORDER– 5

counterclaims raised in a pleading that was moot and has since been superseded.[1] The Court could deny Plaintiff's motion for summary judgment on Defendants' counterclaims on that basis. However, given that the Counterclaims in the now-operative Answer to Plaintiff's Amended Complaint are nearly identical to those addressed by Plaintiff in its motion, and since Plaintiff has also filed a motion to dismiss after the Answer to the Amended Complaint was filed, the Court will address the motions together for the sake of efficiency and judicial economy.[2] *Compare* Dkt. #2 at Counterclaims, ¶¶ 23-65 *with* Dkt. #128 at Counterclaims, ¶¶ 21-63.

**C. Defendants' Counterclaims**

Defendants have asserted six Counterclaims against Plaintiffs. Dkt. #128 at ¶¶ 21-63. The Court addresses each claim, in turn, as follows.

*1. Intentional Interference with Tom Reed Contract*

In their First Counterclaim, Defendants allege that Plaintiff intentionally interfered with Defendants' contractual relations with Tom Reed. Dkt. #128 at ¶¶ 21-27. Mr. Reed is

---

[1] The Court presumes Plaintiff filed its motion prior to an Answer to the Amended Complaint because the Court-imposed deadline for dispositive motions was about to pass. *See* Dkt. #20. At the time Plaintiff filed the instant motions for summary judgment, it had filed an Amended Complaint, Defendants had moved to dismiss the claims in that complaint, and the Court had granted in part the motion to dismiss. *See* Dkt. #111. Thus, Defendants were required to file an Answer to the Amended Complaint within 14 days of the Court's Order, which would have been after the dispositive motion deadline of May 22, 2018. Fed. R. Civ. P. 12(a)(4)(A).

[2] Indeed the sole difference between the Counterclaims appears to be an amended basis for Defendants' Washington Consumer Protection Act Counterclaim, which now references alleged deceptive billing practices. *Compare* Dkt. #2 at Counterclaims, ¶ 60 *with* Dkt. #128 at Counterclaims, ¶ 58.

ORDER– 6

a former employee of Defendants' who went to work for Plaintiff in 2016. Specifically, Defendants allege:

> 19. Cen Com has also stole [sic] business from NextAlarm in an attempt to force Numurex [sic] to sell the NextAlarm brand to Cen Com at a reduced valuation.
>
> 20. Support for this allegation is derived from the fact that NextAlarm hired Tom Reed (a key NextAlarm employee) and used his knowledge of the NextAlarm business to solicit NextAlarm customers in violation of restrictive covenants which forbade Mr. Reed from disclosing company information and forbade him from competing with NextAlarm. Additional support is derived from circumstance:
>
>> a. Active NextAlarm customers terminated their alarm monitoring agreements and contracted with Cen Com for similar services shortly after Tom Reed resigned from Next Alarm;
>>
>> b. Active NextAlarm customers were contacted by Cen Com through email addresses that those customers created for the sole purpose of communicating with NextAlarm;
>>
>> c. Cen Com impermissibly used NextAlarm's federally registered trademark in Internet and email advertisements that deceptively suggest Cen Com, Numerex and NextAlarm are joint partners, ventures, or otherwise engaged in concerted efforts to sell services under the federally registered NEXTALARM service mark. *Compare* Trademark Registration Number 4784209 *with* Your NextAlarm Partner, http://www.nextalarmpartner.com/home.html (last visited, March 30, 2017, at 1:29 PM).
>
> . . .
>
> 22. NextAlarm alleges that the aforesaid conduct of Cen Com constitutes intentional tortious interference with NextAlarm's contractual relations.
>
> 23. NextAlarm had a valid contractual relationship with Tom Reed.
>
> 24. Cen Com had knowledge of NextAlarm's valid contractual relationship with Tom Reed.

ORDER– 7

> 25. Cen Com's aforesaid acts intentionally interfered with NextAlarm's contract with Tom Reed and caused or induced Reed to breach his contract with NextAlarm.
>
> 26. Cen Com's aforesaid acts were committed for an improper purpose and were accomplished through improper means.
>
> 27. NextAlarm has suffered damages proximately caused by Cen Com's aforesaid acts in an amount to be proven at trial.

Dkt. #128 at ¶ ¶ 22-27. Plaintiff asserts that this claim must be dismissed on summary judgment because Defendants cannot prove a valid contractual relationship with Mr. Reed, and they cannot prove that Plaintiff intentionally induced a breach or termination of the relationship. Dkt. #112 at 8.

To the extent that the Counterclaim rests on Mr. Reed's non-compete/non-solicitation clauses of his contract, Defendants agree that the counterclaim should be dismissed. Dkt. #134 at 13. However, Defendants argue that Plaintiff fails to address Mr. Reed's contract to the extent that he allegedly disclosed confidential information to allow Plaintiff to steal Defendants' business. *Id.*

To establish a claim of tortious interference, the plaintiff must prove five elements: (1) the existence of a valid contractual relationship, (2) the defendant(s) had knowledge of that relationship, (3) an intentional interference inducing or causing a breach or termination of the relationship, (4) that defendants interfered for an improper purpose or used improper means, and (5) resultant damage. *Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Grp., Inc.*, 114 Wn. App. 151, 157-58, 52 P.3d 30 (2002). Because Plaintiff moves for summary judgment on the basis that the contract was not valid, this Court first reviews Mr. Reed's contract with respect to that question. *See* Dkt. #115, Ex. J.

ORDER– 8

As an initial matter, the Court notes that Mr. Reed's contract contains a Choice of Law clause providing that it shall be governed by the laws of the State of Georgia. Dkt. #115, Ex. J at ¶ 10. However, the Wholesale Alarm Monitoring Agreement with Alarm Partner Orphan and Billing Provisions contains a "Legal Action" provision in which NextAlarm LLC agreed that the laws of the state of Washington control that agreement **and any other agreement between the parties or with any third party** arising from the relationship between Plaintiff and Defendant. Dkt. #115, Ex. G at ¶ 22. This is problematic because neither of the parties have addressed the appropriate law to apply to the Mr. Reed's contract, although both parties appear to rely on Washington law.

Further, to resolve whether the contract was valid at the time in question, the Court would need to construe several provisions in the contract, and the construction principles between Georgia and Washington state law vary. For example, under Washington law, when interpreting a written contract, the intent of the contracting parties controls. *Dice v. City of Montesano*, 131 Wn.App. 675, 683-84, 128 P.3d 1253 (2006). Washington follows the "objective manifestation theory" of contract interpretation, under which determining the parties' intent begins with a focus on the reasonable meaning of the contract language. *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503, 115 P.3d 262 (2005). Contracts are considered as a whole, interpreting particular language in the context of other contract provisions. *See Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wn.2d 654, 669-70, 15 P.3d 115 (2000). Words are generally given their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent. *Hearst*, 154 Wn.2d at 504. Under Georgia state law:

ORDER– 9

> It is well established that contract construction entails a three-step process, beginning with the trial court's determination as to whether the language is clear and unambiguous. If no construction is required because the language is clear, the court then enforces the contract according to its terms. But if there is ambiguity in some respect, the court then proceeds to the second step, which is to apply the rules of contract construction to resolve the ambiguity. Finally, in the third step, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury. Importantly, as an initial matter, the existence or nonexistence of an ambiguity is a question of law for the court. Should the court determine that ambiguity exists, a jury question does not automatically arise, but rather the court must first attempt to resolve the ambiguity by applying the rules of construction in OCGA § 13-2-2.

*Fannie Mae v. Las Colinas Apartments, LLC*, 815 S.E. 2d 334, 337, 2018 Ga. App. LEXIS 434, *4-5 (2018).

As a result of the parties' failure to address the choice of law question and the appropriate standard under which to construe the contract at issue, the Court finds summary judgment dismissal of this Counterclaim inappropriate, and Plaintiff's motion for summary judgment on Defendants' First Counterclaim will be denied.

*2. Intentional Interference with Defendants' Subscription Contracts*

In their Second Counterclaim, Defendants allege that Plaintiff intentionally interfered with Defendants' customer subscription contracts. Dkt. #128 at ¶ ¶ 28-34. Plaintiff asserts that this claim should be dismissed because a 2016 Nondisclosure Agreement ("NDA") allows it to directly solicit certain accounts, and therefore Defendants cannot prove that Plaintiff interfered with an expected client subscription contract for an improper purpose or by improper means. Dkt. #112 at 11. Defendants respond that the NDA allowed Plaintiff only to solicit certain inactive or canceled accounts, which

ORDER– 10

Defendants never provided to Plaintiff. Dkt. #134 at 12. Thus, Defendants assert that summary dismissal is not appropriate. The Court agrees.

Defendants have produced evidence that it never delivered to Plaintiff any list of inactive or canceled accounts. Dkt. #135, Ex. 16 at 74:20-76:17. This is sufficient to raise a genuine dispute as to a material fact – whether Plaintiff had the right to solicit certain customers at issue. Accordingly, the Court finds summary judgment dismissal of this Counterclaim inappropriate, and Plaintiff's motion for summary judgment on Defendants' Second Counterclaim will be denied.

> *3. Infringement of a Federally Registered Trademark Under 15 U.S.C. § 1114(1)(A) and Federal Unfair Competition and False Designation of Origin Under 15 U.S.C. § 1125(A)*

In their Third Counterclaim, Defendants allege that Plaintiff has willfully infringed the NextAlarm mark in violation of 15 U.S.C. § 1114(1)(A). Dkt. #128 at ¶ ¶ 35-43. In their Fourth Counterclaim, Defendants allege that Plaintiff has willfully attempted to trade or engage in commerce based on the good will associated with the NextAlarm mark, and has thereby deprived Defendants of the ability to control the consumer perception of their goods and service under that mark, in violation of 15 U.S.C. § 1125(A). Dkt. #128 at ¶ ¶ 44-49. Plaintiff asserts that both of these Counterclaims should be dismissed because it was the authorized licensee/assignee of the NextAlarm mark and was authorized to solicit customers with it. Dkt. #112 at 12. Further, Plaintiff asserts that Defendants are not "owners of the mark" for purposes of their Counterclaims. *Id.* at 13. Defendants respond that its claims rest on the same clause under which Plaintiff was permitted to solicit certain inactive or canceled accounts, and that Plaintiff confuses a license to use the name

ORDER– 11

"NextAlarm Alarm Partner" for such solicitation with a wholesale assignment of the mark. Dkt. #134 at 10-12.

As with Counterclaim Two, Defendants have produced evidence that it never delivered to Plaintiff any list of inactive or canceled accounts. Dkt. #135, Ex. 16 at 74:20-76:17. Further, Defendants have produced evidence that Plaintiff continued to use the mark after the license was terminated. Dkt. #134 at 11. This is sufficient to raise a genuine dispute as to material facts – whether Plaintiff had the right to solicit certain customers at issue and whether Plaintiff improperly used the mark after the agreement was terminated. Accordingly, the Court finds summary judgment dismissal of these Counterclaims inappropriate, and Plaintiff's motion for summary judgment on Defendants' Third and Fourth Counterclaims will be denied.

*4. Violation of the Anti-Cybersquatting Consumer Protection Act Under 15 U.S.C. § 1125(D)*

In their Fifth Counterclaim, Defendants allege that Plaintiff has unlawfully used an internet domain name including the federally registered NextAlarm mark in violation of 15 U.S.C. § 1125(D). Dkt. #128 at ¶¶ 50-56. This Counterclaim involves the same provision described above, allowing Plaintiff to solicit certain inactive or canceled accounts. As with Counterclaims Two-Five, Defendants have produced evidence that it never delivered to Plaintiff any list of inactive or canceled accounts. Dkt. #135, Ex. 16 at 74:20-76:17. Further, Defendants produce evidence that Plaintiff continued to use the mark/internet domain after the license was terminated. Dkt. #134 at 11. This is sufficient to raise a genuine dispute as to material facts – whether Plaintiff had the right to solicit certain customers at issue and whether Plaintiff improperly used the mark after the agreement was

ORDER– 12

terminated. Accordingly, the Court finds summary judgment dismissal of these Counterclaims inappropriate, and Plaintiff's motion for summary judgment on Defendants' Fifth Counterclaim will be denied.

   *5. Violation of the Washington Consumer Protection Act Under RCW § 19.86, et seq.*

Finally, in their Sixth Counterclaim, Defendants allege that Plaintiff has violated Washington's Consumer Protection Act by engaging in the above described infringements and in deceptive billing practices. Dkt. #128 at ¶ ¶ 57-63. Plaintiff asks the Court to strike this Counterclaim on the basis that it raises an untimely, new theory as the basis of the claim, without seeking leave of the Court. Dkt. #146. For the reasons set forth by Defendants, dkt. #159 at ¶ ¶ 2-5, the Court disagrees that the portion of the CPA claim relying on unfair billing practices is untimely, and the Court will deny Plaintiff's motion to dismiss that portion of the claim. Moreover, the Court finds that genuine disputes of material fact exist as to the public interest element of the claim, particularly given the evidence provided by Defendants regarding other consumer complaints across the country. Dkt. #159 at ¶ ¶ 3-7 and Exhibits thereto.

With respect to the portion of the CPA claim resting on alleged trademark infringements, the Court has already determined that genuine disputes as to material facts preclude summary judgment. Therefore, to the extent that the Sixth Counterclaim relies on alleged infringements, that portion of the Counterclaim will not be dismissed, and Plaintiff's request for summary judgment on that Counterclaim will be denied.

///

///

ORDER– 13

*6. Defendants' Motion to Strike*

Defendants' have moved to strike Plaintiff's contemporaneously-filed summary judgment motions on the basis that such filing violates the Court's Local Rules. Dkt. #134 at 14. The Court declines to strike the motions.

**D. Plaintiff's Breach of Contract Claim**

The Court next turns to Plaintiff's motion for partial summary judgment on its breach of contract claim. Dkt. #117 (filed under seal). Specifically, Plaintiff asserts that because "Defendants admit the 2016 Alarm Delivery Contract requires them to pay fees and charges for services rendered under it by ADM[;] Defendants admit [Plaintiff] continues to provide services under the 2016 Alarm Delivery Contract[; and] Defendants admit they have not satisfied all outstanding invoices for services rendered by [Plaintiff,] . . . no reasonable jury could return a verdict for Defendants on the issue of breach[,] and summary judgment for [Plaintiff] is proper." Dkt. #117 at 1. Defendants oppose the motion, responding that questions of fact with respect to their affirmative defenses of duress and unclean hands preclude summary judgment. Dkt. #134 at 3-9. For the reasons discussed herein, the Court DENIES Plaintiff's motion.

In its motion for summary judgment, Plaintiff generally argues that there are outstanding invoices that are required to be paid under the governing contract between the parties, and that there is no dispute those invoices have not been paid; therefore, Plaintiff asserts that its breach of contract claim should be granted. Dkt. #117. The contract at issue is governed by Washington state law. Dkt. #115, Ex. F at ¶ 21. In order to succeed on a breach of contract claim under Washington law, a plaintiff must prove (1) a valid contract

ORDER– 14

term between parties imposing a duty, (2) a breach of that duty, and (3) resulting damages. *See Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wn. App. 707, 899 P.2d 6, 9 (Wash. Ct. App. 1995); Washington Pattern Jury Instructions No. 300.01 (6th ed. 2013).

However, Plaintiff's claim fails before the Court even reaches an analysis of the substantive arguments. This is because Plaintiff fails to identify the specific provision or provisions of the contract that have been breached, and how the evidence in the record proves such a breach. *See* Dkt. #117 at 8-9. In fact, Plaintiff fails to even identify in the record the alleged outstanding invoices that remain to be paid. *Id.* and Dkt. #115. On summary judgment, it is not enough for Plaintiff to rely on general averments. The moving party bears the initial burden of showing an absence of any genuine issues of material fact. *Celotex v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Plaintiff has not satisfied that burden. Accordingly, Plaintiff's motion will be denied.

**E. Defendants' Motion to Seal**

The Court next addresses Defendants' motion to seal portions of its opposition to Plaintiff's motion to dismiss and the accompanying Declaration and exhibits supporting those portions of that brief. Dkt. #155. Defendants have asked to file that material under seal pursuant to the parties' Protective Order in this matter, as Plaintiff has marked those materials "highly confidential-attorney's eyes only." Dkt. #159, Exs. 1-7. However, Defendants do not believe the material should be sealed. Under the Court's Local Civil Rules, "the party who designated the document confidential must satisfy subpart (3)(B) in its response to the motion to seal or in a stipulated motion." LCR 5(g)(3). Thus, Plaintiff bears the burden on this motion.

ORDER– 15

"There is a strong presumption of public access to the court's files." LCR 5(g)(2). For dispositive motions, parties must make a "compelling showing" that the public's right of access is outweighed by the parties' interest in protecting the documents. "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such court files might have become a vehicle for improper purposes, such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (internal citations omitted). "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.* (citing *Foltz v. State Farm Mut. Auto. Ins. Co.,* 331 F.3d 1122, 1136 (9th Cir. 2003)). Further, the Court will not grant broad authority to file documents under seal simply because the parties have designated them as confidential in the course of discovery. *Kamakana,* 447 F. 3d at 1183. "If possible, a party should protect sensitive information by redacting documents rather than seeking to file them under seal." CR 5(g)(3). Thus, "the motion or stipulation to seal should include an explanation of why redaction is not feasible." *Id.*

In this case the material at issue involves consumer complaints that Defendants wish to use in support of its CPA counterclaim. Plaintiff argues that these materials should remain sealed because they involve private, non-party interests, involve settlement communications between Plaintiff and different Attorney General's Offices, and because they are only being offered for improper purposes. Dkt. #162. The Court is not persuaded.

ORDER– 16

First, Plaintiff fails to convince the Court that these materials contain private consumer interests. Nothing about the types of complaints made to a state Attorney General's office suggests that the consumers believed the information would be private or should be kept private. Indeed, in many cases, the consumers were specifically seeking an investigation by the state agency. Second, Plaintiff misconstrues FRE 408 regarding settlement discussions. That Rule precludes evidence of an offer-to compromise as an admission of, as the case may be, the validity or invalidity of the claim. FRE 408. However, the evidence is allowed for other purposes. FRE 408(b). Thus, the Court does not believe the materials should be sealed under Rule 408. Finally, the Court is not convinced that the materials are sources of information that might harm Plaintiff's competitive standing in the industry. *See* Dkt. #162 at 10. Indeed, Plaintiff simply makes a blanket statement that such is the case, without explaining how or why the materials would be harmful. Moreover, many of these materials are more than two years old, and Plaintiff fails to explain how the passage of time has not diminished any competitive affect.

The Court acknowledges that this material is likely embarrassing to Plaintiff. However, as noted above, "[t]he mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana,* 447 F. 3d at 1179. Accordingly, Defendants' motion to seal will be denied.

**F. Sanctions**

On June 18, 2018, this Court directed Plaintiff to show cause why sanctions should not be entered against it for violating the parties' Stipulated Protective Order and the

ORDER– 17

Court's Local Rules by filing several motion, briefs and Declarations under seal without moving to do so. Dkt. #148. The Court also noted that this is not the first time Plaintiff has violated a Protective Order or the Court's Local Rules. *Id.* In response, Plaintiff states that it failed to file contemporaneous motions to seal because it believed it was not required to do so. Dkt. #160 at 4. While the Court does not believe that there is anything unclear about the requirements of either the parties' Stipulated Protective Order or Local Civil Rule 5(g), the Court will not impose sanctions at this time. However, this serves as a warning to Plaintiff to again familiarize itself with the Court's Orders, Rules and procedures to avoid potential future sanctions. For the reasons set forth by Defendant in its response to the Order to show cause, the documents at issue shall remain sealed. *See* Dkts. #165 and #166.

## IV. CONCLUSION

Having reviewed Plaintiff's Motions for Summary Judgment and to Dismiss, the Opposition thereto and Reply in support thereof, along with the supporting Declaration and Exhibits and the remainder of the record, the Court hereby finds and ORDERS:

1. Plaintiff's Motion for Summary Judgment (Dkt. #112) is DENIED as discussed above.

2. Plaintiff's Partial Motion for Summary Judgment on the breach of contract claim (Dkt. #117) is DENIED.

3. Plaintiff's Motion to Dismiss or Strike Counterclaims (Dkt. #146) is DENIED.

4. Defendant's Motion to Seal (Dkt. #155) is DENIED. The Court shall unseal Defendants' Opposition to Plaintiff's Motion to Dismiss located at Dkt. #157, along with the Declarations and Exhibits in support thereof located at Dkt. #159.

DATED this 31st day of August, 2018.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER– 19